IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Everkrisp Vegetables Inc., an Arizona corporation and Bickman Farms, an Arizona general partnership, | ) ) ) | Case No. 3:10-cv-112 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) ) | **ORDER ON DEFENDANTS BRUCE OTTO, SUSAN OTTO, AND CRYSTAL** |
| Tobiason Potato Company, Inc., a North Dakota corporation; Bruce Otto and Susan Otto, husband and wife; and Crystal Seed Potato Company, a North Dakota corporation, | ) ) ) ) ) ) ) | **SEED POTATO COMPANY'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendants Bruce and Susan Otto's motion to dismiss them as individual defendants in this action and Crystal Seed Potato Company, Inc.'s (hereafter "Crystal Seed") motion for summary judgment and/or to limit damages (Docs. #86, 93). Susan Otto asserts she has no ownership interest in Crystal Seed and no involvement in the production of seed potatoes and, therefore, she is entitled to be dismissed from this action. Bruce Otto claims that, as a part-owner of Crystal Seed, he is protected as a matter of law by the corporate veil and should be dismissed from this action. Crystal Seed asserts that it is entitled to summary judgment because North Dakota law precludes the warranty claims, it made no false statements during the sale of the seed potatoes, and recovery under a strict liability theory is limited by application of the economic loss doctrine.

Plaintiffs Everkrisp Vegetables Inc. and Bickman Farms (hereafter collectively referred to as "Everkrisp") have filed a brief in opposition to the motions (Doc. #109). Everkrisp concedes that Susan Otto should be dismissed from this action, but asserts that Bruce Otto

should remain personally liable for failure to keep the warehouse clean and sanitary.   Everkrisp also contends the seed potatoes contained a latent defect in violation of an express warranty and its claim for consequential damages is allowed under the Uniform Commercial Code.  As to its strict liability claim, Everkrisp maintains that there is a material fact regarding whether the seed potatoes had something "inherent in it, which caused it to harm itself" which renders summary judgment improper.  The Court, having considered the evidence and arguments of the parties, now issues this memorandum opinion and order.

## <u>SUMMARY OF DECISION</u>

Applying the "foreseeability approach" established in <u>Dakota Gasification Co. v. Pascoe Bldg. Sys.</u>, 91 F.3d 1094, 1099 (8th Cir. 1996), the alleged damages caused by bacterial ring rot, a known disease in seed potatoes, was something that was clearly forseeable when Everkrisp purchased the seed potatoes.  Thus, the economic loss doctrine applies to Everkrisp's tort claims. Crystal Seed's motion for summary judgment on the tort claims is granted.

The Court finds the warranty disclaimer on the invoices sent to Everkrisp was conspicuous and complied with North Dakota's Uniform Commercial Code provisions relating to exclusion or modification of warranties, N.D. Cent. Code §41-02-33.  The Court further finds that there is insufficient evidence in the record to raise a fact question on whether there was unequal bargaining power between the parties.  Likewise, there is insufficient evidence in the record to establish whether or not Everkrisp was free to bargain for a more comprehensive remedy if it deemed the limitation on damages to the purchase price inadequate.  Because there is no procedural or substantive unconscionability in enforcing the limitations of remedies provision. Crystal Seed's motion for summary judgment to limit damages is granted.

2

Everkrisp concedes Susan Otto had no control or ownership interest in Crystal Seed and, therefore, should be dismissed as a defendant in this action.  Susan Otto's motion to dismiss is granted.  The North Dakota Supreme Court has set forth several factors to be considered when determining whether the corporate veil should be pierced, including, for example, insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, insolvency of the debtor corporation at the time of the transaction in question, and the existence of the corporation as merely a facade for individual dealings.  Hilzendager v. Skwarok, 335 N.W.2d 768, 774 (N.D. 1983). Everkrisp has failed to meet its burden of establishing any of the Hilzendager factors and thus Bruce Otto's motion to dismiss is granted.

## PROCEDURAL BACKGROUND

On May 5, 2011, this Court granted Tobiason Potato Company's motion to dismiss under N.D. Cent. Code § 28-01.3-04 (liability of a nonmanufacturing seller) (Doc. #73).  In doing so, the Court determined North Dakota law applied in this diversity action.  Judgment dismissing all claims against Tobiason was entered on this same day (Doc. #74).

Everkrisp alleges the following claims against Crystal Seed and Bruce and/or Susan Otto: Breach of Express Warranty (Count II); Breach of Implied Warranty (Count IV); Negligent Misrepresentation (County VI); and Strict Liability (Count VIII) (Doc. #1).  Everkrisp seeks damages resulting from the loss of its 2009 potato crop and contamination of its soils and lands.

## FACTUAL BACKGROUND

The Court previously set forth the factual background giving rise to the claims in this case in its Order dismissing Tobiason as a defendant in this action.  Because the parties are familiar with the facts and they have been previously recited by the Court, the Court will refer to

the facts in this Order only as necessary to decide the pending issues.

Crystal Seed is a grower of potato seed buds (Doc. #52, Answer at ¶ 5). Bruce Otto owns 49.9 percent of the corporation, Robert Otto owns 49.9 percent of the corporation, and John Otto owns .2 percent of the corporation (Doc. #106, Dep. Bruce Otto pp. 10-11). Bruce Otto handles almost all of the operations of the corporation. Id. at 13.

Tobiason is a wholesale potato dealer licensed under North Dakota law to purchase and sell certified seed potatoes. Tobiason and Everkrisp have had a business relationship for over 35 years (Doc. #51, Answer ¶ 7). On September 30, 2008, Everkrisp purchased "Blue Tag" certified seed potatoes from Tobiason (Doc. #51, Answer ¶ 7; Doc. #1, Complaint at ¶ 7; Doc. #106, Dep. Etchart p. 22). The terms of the contract between the parties were contained in the invoices (Doc. #106, Dep. Etchart p. 24). There were no oral terms outside of the terms on the invoices. Id. The invoices contained the following liability disclaimer:

> Buyer and seller recite that they are both merchants and have negotiated the terms of this sale. The grade of the seed potatoes sold herein has been or will be determined by a federal/state inspection service. Seller makes no warranty as to the accuracy of such inspection. **SELLER MAKES NO WARRANTY EXPRESSED OR IMPLIED OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE EXCLUSIVE REMEDY FOR DAMAGES** arising out of this transaction whether for breach of contract, warranty, negligence or any other reason, shall be limited to the purchase price of the seed lot involved in the claim. Seller is not responsible for consequential commercial damages arising from disease, loss of crop yield quality, crop production or any other factor affecting the crop produced by this seed. This sale is subject to the provisions of § 4-10-04 N.D.C.C. and N.D.S.P.C. § Reg. 74-04-01-03.

(Doc. #1-6) (emphasis in original).

Between November 28, 2008, and January 21, 2009, twenty-eight semi-truckloads of seed potatoes from Crystal Seed were shipped directly to Everkrisp after the seed potatoes had been inspected by the North Dakota State Seed Department (Doc. #51, Answer ¶¶ 8-11; Doc.

4

#109, p. 13 of 32).  Everkrisp received approximately 1,546,260 pounds of seed potatoes, which were packed in plastic totes inside the truck.[1] (Doc. #1, Complaint, ¶ 13).  Upon receipt, Everkrisp unloaded the totes and either stored the seed potatoes in a shed or cut them for immediate planting (Doc. #106, Dep. Houge p. 27).

When Everkrisp began harvesting the potatoes in April 2009, it discovered an inordinate amount of rotten potatoes.  Id. at pp. 34, 54.  This was the first time Everkrisp discovered the potatoes were diseased.  Id. at p. 56.  After testing by a North Dakota seed potato inspector, Everkrisp and Crystal Seed learned that the potatoes were infected with bacterial ring rot.

The North Dakota State Seed Department conducted an investigation in an effort to determine the origin of the infection.  Crystal Seed had purchased the seed potatoes from a farmer in Cando, North Dakota in 2007.  The seed potatoes were reproduced and multiplied in 2007 by Crystal Seed and then grown in a commercial crop in 2008.  Crystal Seed believes the ring rot originated in the seed purchased from the farmer in 2007  (Doc. #106, Dep. Otto p. 135). Everkrisp alleges its more likely that the origin of the infection occurred in Crystal Seed's warehousing bins before shipment.  Nobody, including the State Seed Department, has been able to determine exactly when or how the seed potatoes were infected with ring rot (Doc. #106, Dep. Otto p. 135).  It is indisputable, however, that after Everkrisp discovered the bacterial ring rot in its crop, inspectors from the State of North Dakota obtained samples from Crystal Seed's warehousing bins.  Some of these potatoes tested positive for bacterial ring rot and were dumped for feed (Doc. #106, Dep. Otto pp. 97-99, 109).

_____

[1] In addition to the seed potatoes received from Crystal Seed, Everkrisp received seven truckloads of seed potatoes from Gilleshammer-Thiele.  The seed potatoes from Gilleshammer-Thiele are not at issue in this lawsuit.

Everkrisp always purchased Blue Tag certified seed potatoes from Tobiason.  According to the North Dakota State Seed Department, a Blue Tag grade is "given to seed lots having the higher standards for physical defects, condition and size that approximate U.S. No. 1."[2]  (Doc. #106, Dep. Otto Exh. 7).  The State Seed Department's disease detection process is based on visible symptoms noted in the potato plants with the exception of potentially latent potato viruses which are detected using serological methods.  Id.  Although there is a "zero tolerance" for bacterial ring rot, the certification process does not guarantee that the lot is free from the disease - it means that none of the disease was found during inspection.  Id.  When the seed department determines the potatoes meet the "Blue Tag" standards, a tag is affixed to the container.  The tag contains the following disclaimer:

> LIMITATION OF WARRANTY: Since the use, crop, yields or quality of certified seed potatoes is beyond the control of the producer, the seller, the inspector or the North Dakota State Seed Department, no warranty of any kind, expressed or implied as to the quantity or quality of the crop produced from certified seed or as to certified seed quality beyond the express representation that the seed potatoes were produced graded, sacked and inspected under the seed certification rules and regulations of the North Dakota State Seed Department (available from the State Seed Department, University Station, Fargo, North Dakota 58105).   The Seed Department and inspection service function and serve only in an official regulatory manner.

(Doc. #97-4).

North Dakota law exempts the state seed department and certified seed potato producers from liability based on the quantity or quality of the crop produced from the seed potatoes:

> The state seed commission, state seed department, commissioner and the commissioner's employees, certified seed potato producers, and wholesale potato dealers licensed under [N.D. Cent. Code] chapter 4.1-57 make no expressed or

---

[2]"U.S. No. 1" is a grade for potatoes that must conform to the requirements, standards, and regulations specified by the United States Department of Agriculture.  N.D. Cent. Code § 4-10-06.4.

> implied warranty of any kind as to the quantity or quality of the crop produced from the seed potatoes or through other produce inspected and certified, including merchantability, fitness for a particular purpose, or absence of disease. The only representation is that the potatoes or other produce were inspected under the rules of the state seed department or United States department of agriculture. The commissioner and the commissioner's employees function and serve only in an official regulatory manner.

N.D. Cent. Code § 4-10-12.1.  This statute was approved by the Committee of Agriculture on March 11, 1981 (Doc. #114-1, p. 3 of 13).  It was introduced because of lawsuits involving the State Seed Commissioner and State Seed Department in Washington (Doc. #114-1, p. 6 of 13 Comments of Virgil Anderson).  The provision was not intended to relieve any party from all potential liability such as that arising out of negligent acts, but was intended to protect both the grower and the State Seed Department from expansive liability (Doc. #114-1, p. 11 of 13 Comments of Ken Amstrup and Doug Johnson). The Court has conducted a search of other state laws and was not able to find similar statute in effect in any other state.

## DISCUSSION

### 1.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The burden is on the moving party to establish the basis for its motion.  Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002).  Evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party enjoys the benefit of all reasonable inferences to be drawn from the facts. Quinn v. St. Louis County, 653 F.3d 745, 750 (8th Cir. 2011).  If the moving party shows there are no genuine issues of material fact, the burden shifts to the non-moving party to set forth facts

showing a genuine issue for trial.  Donovan, 289 F.3d at 529.

      **2.**        **Negligence and Strict Liability Claims**

      Everkrisp alleges claims of products liability and negligent misrepresentation, which are tort claims grounded in negligence or strict liability.[3]  "Under the economic loss doctrine in North Dakota, 'economic loss resulting from damage to a defective product, as distinguished from damage to other property or persons, may be recovered in a cause of action for breach of warranty or contract, but not in a tort action.'"  Leno v. K & L Homes, Inc., 803 N.W.2d 543, 550 (N.D. 2011) (quoting Steiner v. Ford Motor Co., 606 N.W.2d 881, 884 (N.D. 2000)).  While the North Dakota Supreme Court has not yet considered whether tort recovery is permitted for damage to "other property", the Eighth Circuit and the District of North Dakota have addressed this issue.  These courts, in adopting an expansive approach to the economic loss doctrine, have predicted that the North Dakota Supreme Court would preclude liability in tort for physical damage to property where the "damage was a foreseeable result of a defect at the time the parties contracted."  Dakota Gasification Co. v. Pascoe Bldg. Sys., 91 F.3d 1094, 1099 (8th Cir. 1996); DJ Coleman, Inc. v. Nufarm Americas, Inc., 693 F.Supp.2d 1055, 1064 (D.N.D. 2010); Albers v. Deere & Co., 599 F.Supp.2d 1142 (D.N.D. 2008).  There has been no subsequent state court decision or statutory amendment rendering the prediction clearly wrong and thus this Court will apply the precedent established by the Eighth Circuit and followed by this Court.

      Applying the "foreseeability approach" established in Dakota Gasification, the Court finds the alleged damages caused by bacterial ring rot was something that was clearly forseeable

---

      [3] Everkrisp recently moved to amend its complaint to include a claim for ordinary negligence (Doc. #116). This Order does not address that claim, as it is a matter left within the province of the magistrate judge.

when Everkrisp purchased the seed potatoes.  While Everkrisp did not anticipate that the seeds would be infected with bacterial ring rot, the latent disease is, or should have been, a known risk to potato farmers.  "Foreseeability" means "the quality of being reasonably anticipatable."  Black's Law Dictionary (9th ed. 2009).  Although Everkrisp has been harvesting potatoes for over 30 years, the mere fact that Everkrisp asserts it lacked knowledge of the specific disease before this incident does not make the existence of the disease unforeseeable.   Moreover, contrary to Everkrisp's contentions, the process of certifying the seed potatoes simply notifies the purchaser that the product was inspected in accordance with state and/or federal rules and regulations.[4]  Thus, the inspection process that occurred in this case does not alter the forseeability analysis.

Everkrisp contends that it is significant whether the seed potatoes were infected by an outside source in Crystal Seed's warehouse or whether they were infected while in Crystal Seed's field.  Everkrisp asserts that a different rule applies if the origin of the infection is an outside source in Crystal Seed's warehouse.  Under this scenario, Everkrisp believes strict liability (or ordinary negligence) would apply to Everkrisp's crop loss and the injury to the lands and soils, despite North Dakota's law on the economic loss doctrine.

While both sides are left to speculate as to where and when the seeds became infected, the process by which the seed potatoes arrived in Everkrisp is not disputed.  Crystal Seed used a potato harvester to pull the seed potatoes out of the ground (Doc. #106, Dep. Otto p. 17).  The

---

[4] "Certified" by the North Dakota State Seed Department means "the potatoes were randomly inspected and found to meet the rules of the seed department at the time of inspection."  N.D. Cent. Code § 4-10-01(2).  It is not create a guarantee or warranty that the product is merchantable, fit for a particular purpose, or free of disease.  N.D. Cent. Code § 4-10-12.1.

potatoes were loaded into a truck and then put into bins in its warehouse.  Id. at pp. 17-18.  Each bin holds approximately 20 truckloads.  Id. at p. 18.  When the potatoes were ready for shipment, they were loaded into plastic totes and shipped by truck to their destination.  Id, at pp. 30-31.  While the seed potatoes were being loaded, an inspector from the North Dakota Seed Department pulled samples, inspected the potatoes, and certified the product before the potatoes were transported out of state.  Id. at pp. 38-39.  This "shipping point" inspection involved collecting 25-pound samples and cutting at least five potatoes to look at the ring for bacterial ring rot (Doc. #106, Dep. Schrage  pp. 37-38).  No ring rot was discovered during the inspection.

A primary method of spreading ring rot is through the use of farm equipment, such as a seed cutter (Doc. #106, Dep. Schrage  p. 83).  In this case, Everkrisp cut the seed potatoes using seed cutters when it planted the crop.  Id. at p. 85; Dep. Etchart pp. 27, 31. While there is nothing that can be done to cure a seed potato infected with bacterial ring rot, disinfecting the seed cutters will prevent the spread of the disease.  Id.   It is undisputed that the seed potatoes grown by Crystal Seed showed no sign of disease until they were harvested by Everkrisp in the spring.  It is also undisputed that Everkrisp did not disinfect the seed cutter any time prior to discovering the bacterial ring rot (Doc. #106, Dep. Etchart p. 27).  Based on all of the evidence gathered by both parties, it is apparent that the likely cause of the widespread infection in the crop occurred during the cutting and planting of the seed potatoes in Arizona.

Under North Dakota's Product Liability Act, a product is considered defective when, at the time it was sold by the manufacturer or initial seller, the product contained a defect or was in a defective condition making the product unreasonably dangerous.  N.D. Cent. Code § 28-01.3-04.  Whether the seed potatoes were infected with bacterial ring rot in Crystal Seed's field or in

Crystal Seed's warehouse is immaterial in this case.  Viewing the evidence in a light most favorable to Everkrisp, at least some of the seed potatoes were infected when they left Crystal Seed's control and thus the product was defective at the time it left Crystal Seed's warehouse. Once cut with the seed cutters and planted by Everkrisp, the infected seed potatoes caused what can only be described as widespread devastation to Everkrisp's potato crop and land.  Everkrisp has not pointed to any authority to support its theory that contamination in the warehouse bins would lead to a different result than if the seed potatoes were infected while in the field.  Under both theories, the seed potatoes were defective when they left Crystal Seed's control.  The economic loss doctrine applies to Everkrisp's strict liability and negligence claims.

Viewing the facts in the light most favorable to the nonmoving party, the Court assumes that at least some of the seed potatoes arrived in Arizona at Everkrisp's farm already infected with bacterial ring rot.   It is apparent that the ring rot was spread to uninfected potatoes when Everkrisp cut and planted the seed potatoes.  The presence of bacterial ring rot was not an unknown circumstance such that it could not have been contemplated by the parties.  Under the circumstances, the economic loss doctrine applies to Everkrisp's tort claims.[5]  Crystal Seed's motion for summary judgment on the tort claims is **GRANTED**.

**3.      Express and Implied Warranty**

Everkrisp contends that Crystal Seed and Bruce and/or Susan Otto breached an express

---

[5] Even if not barred by the economic loss doctrine, Everkrisp's negligent misrepresentation claim against Crystal Seed fails as a matter of law.  The record is devoid of any evidence that there was a misrepresentation that caused Everkrisp to enter into the contract. The record is plain that Everkrisp communicated solely with Tobiason when ordering the seed potatoes and Everkrisp has failed to identify a misrepresentation that caused it to enter the contract.

11

warranty of fitness for a particular purpose and implied warranties of fitness and merchantability. Despite determining that the economic loss doctrine bars recovery for the alleged tort claims, damages may be recoverable under express and implied warranties.  Hagert v. Hatton Commodities, Inc., 350 N.W.2d 591, 595 (N.D. 1984).  Damages may include added expenses and a lesser yield.  Id.

A party alleging breach of warranty bears the burden of demonstrating the existence of a warranty, breach of warranty, and causation.  Haggert v. Hatton Commodities, Inc., 384 N.W.2d 654, 657 (N.D. 1986).  Under North Dakota's Uniform Commercial Code, all warranties can be excluded or modified. N.D. Cent. Code § 41-02-33 (2-316).  The statute provides, in relevant part:

> 1.   Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed whenever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (section 41–02–09), negation or limitation is inoperative to the extent that such construction is unreasonable.
>
> 2.   Subject to subsection 3, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. . . .

"Conspicuous" means "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is 'conspicuous' or not is a decision for the court." N.D. Cent. Code § 41-01-09(2)(j). The following are examples of conspicuous terms:

> (1)   A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

12

(2)     Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

<u>Id.</u>

Under North Dakota law, "[a]ttaching a tag labeled 'certified seed' is a warranty."

<u>Haggert I</u>, 350 N.W.2d at 596.  However, in this case, both the tag certifying the seed and the invoices for the sale of the seed disclaimed any warranty of any kind, expressed or implied, as to the quality of the seed.  The disclaimer on the invoices read as follows:

> Buyer and seller recite that they are both merchants and have negotiated the terms of this sale.  The grade of the seed potatoes sold herein has been or will be determined by a federal/state inspection service.  Seller makes no warranty as to the accuracy of such inspection. **SELLER MAKES NO WARRANTY EXPRESSED OR IMPLIED OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  THE EXCLUSIVE REMEDY FOR DAMAGES** arising out of this transaction whether for breach of contract, warranty, negligence or any other reason, shall be limited to the purchase price of the seed lot involved in the claim.  Seller is not responsible for consequential commercial damages arising from disease, loss of crop yield quality, crop production or any other factor affecting the crop produced by this seed.  This sale is subject to the provisions of § 4-10-04 N.D.C.C. and N.D.S.P.C. § Reg. 74-04-01-03.

(Doc. #1-6) (emphasis in original).

It is apparent that the warranty disclaimer on the invoices sent to Everkrisp is conspicuous.  The language disclaiming the express and implied warranties is in capital letters, bold typesetting, and underlined.  The Court finds these actions are sufficient to put a reasonable party on notice of the disclaimer.  <u>Red River State Bank v. Reierson</u>, 533 N.W.2d 683, 687 (N.D. 1995) (quoting <u>Stevenson v. TRW Inc.</u>, 987 F.2d 288, 296 (5th Cir. 1993)) (noting terms are conspicuous when it draws the reader's attention to them, such as when it is printed in all capital letters, appears in larger type than the terms around it, or when it is in a larger and boldface

13

type).

Under North Dakota law, implied warranties can be in the form of implied warranty of merchantability, N.D. Cent. Code § 41-02-31, or implied warranty of fitness, N.D. Cent. Code § 41-02-32.  With regard to the exclusion of implied warranty of merchantability, the disclaimer must mention "merchantability".  N.D. Cent. Code § 41-02-33(2).  In this case, the disclaimer contains the term "merchantability" and thus the statutory requirement is met. With regard to the exclusion of implied warranty of fitness, the disclaimer must be in writing and conspicuous.  Id. The disclaimer at issue was in writing, it was conspicuous, and it mentioned both merchantability and fitness.  The invoices effectively disclaimed all implied warranties.

Furthermore, North Dakota law limits the liability of agricultural seed producers.  N.D. Cent. Code § 4-10-12.1.  The statute provides, in relevant part: "certified seed potato producers . . . make no expressed or implied warranty of any kind as to the quantity or quality of the crop produced from the seed potatoes . . ., including merchantability, fitness for a particular purpose, or absence of disease."  The tags on the totes containing the seed potatoes in this case contained the following disclaimer:

> LIMITATION OF WARRANTY: Since the use, crop, yields or quality of certified seed potatoes is beyond the control of the producer, the seller, the inspector or the North Dakota State Seed Department, no warranty of any kind, expressed or implied as to the quantity or quality of the crop produced from certified seed or as to certified seed quality beyond the express representation that the seed potatoes were produced graded, sacked and inspected under the seed certification rules and regulations of the North Dakota State Seed Department (available from the State Seed Department, University Station, Fargo, North Dakota 58105).  The Seed Department and inspection service function and serve only in an official regulatory manner.

(Doc. #97-4).  Everkrisp was on notice of the warranty disclaimer and enforcing the disclaimer

14

printed on the invoices and tags is consistent with North Dakota law.

The disclaimer contained on the invoices limited any damages to the purchase price for the seed lot.  While N.D. Cent. Code § 41-02-94 (2-715) permits the recovery of consequential damages for injury to property proximately caused by a breach of warranty, N.D. Cent. Code § 41-02-98 (2-719) allows the parties to limit the remedies available upon breach and to exclude consequential damages.  Section 41-02-98(3) provides:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Crystal Seed contends the disclaimer specifically limits the remedies available to Everkrisp to the purchase price of the seed lot.  The relevant language reads as follows:

> **THE EXCLUSIVE REMEDY FOR DAMAGES** arising out of this transaction whether for breach of contract, warranty, negligence or any other reason, shall be limited to the purchase price of the seed lot involved in the claim.  Seller is not responsible for consequential commercial damages arising from disease, loss of crop yield quality, crop production or any other factor affecting the crop produced by this seed.

(Doc. #1-6) (emphasis in original).

Everkrisp requests that this Court decline to enforce the limitation of remedies provision on the basis that the disclaimer on the invoices is a post-contract attempt to avoid liability and is unconscionable.  The doctrine of unconscionability permits a court to decline to enforce a provision in a contract that limits the remedies a buyer may pursue.  Constr. Assoc., Inc. v. Fargo Water Equip. Co., 446 N.W.2d 237, 241 (N.D. 1989); N.D. Cent. Code § 41-02-19.  In determining unconscionability, this Court will follow the analysis set forth in DJ Coleman, Inc.

15

v. Nufarm Americas, Inc., 693 F.Supp.2d 1055 (D.N.D. 2010).  In order for a provision to be

unconscionable, a court must consider all of the facts and circumstances of a particular case and

both procedural and substantive unconscionability must be shown.  Id. at 1072.

Procedural unconscionability focuses on contract formation and the bargaining process.

Id. (quoting Strand v. U.S. Bank Nat. Ass'n ND, 693 N.W.2d 918, 924 (N.D. 2005).  "When one

party is in such a superior bargaining position that it totally dictates all terms of the contract and

the only option presented to the other party is to take it or leave it, some quantum of procedural

unconscionably is established."  Strand, 693 N.W.2d at 925.  Everkrisp grows a variety of

different vegetables but potatoes have been its "mainstay" for a number of years (Doc. #57-1,

Aff. Etchart ¶ 3).  Tobiason is a North Dakota seed potato wholesaler.  Everkrisp concedes that,

based upon its knowledge, Tobiason is a company "similar" to Everkrisp in that they are both

family farming operations and have been for many years (Doc. #57-1, Aff. Etchart ¶ 8).

Everkrisp has conducted business with Tobiason for several decades, but has also purchased seed

potatoes from another source in Nebraska to save on freight costs.  (Doc. #106, Dep. Etchart pp.

15-16).  Everkrisp has not pointed to any evidence in the record demonstrating there was a

disparity in bargaining power at any time during its relationship with Tobiason such that its only

option was to "take it or leave it."

With regard to the events giving rise to this litigation, Everkrisp placed its order for seed

potatoes with Tobiason in early September 2008, similar to prior years (Doc. #21-3, Aff. Baglien

¶ 5).  Tobiason faxed or e-mailed the invoice to Everkrisp, listing the quantity of certified seed

potatoes expected to be purchased and the expected price.  Id.  Everkrisp knew about the

disclaimer of warranties and limitation of remedies printed on the invoices (Doc. #106, Dep.

16

Etchart p. 25).  Tobiason has included substantially similar language on its invoices to buyers, including Everkrisp, since 1981 (Doc. #21-3, Aff. Baglien ¶ 7).   Even though Everkrisp knew about the liability limitation through its course of dealings with Tobiason, at no time during the process of ordering seed potatoes or upon receipt of the shipment did Everkrisp request modification or exclusion of the contractual provision.  In light of the long-standing relationship between Everkrisp and Tobiason, the commercial nature of the transaction, and the experience of the parties, if Everkrisp deemed recovery of the purchase price inadequate then it was free to bargain for a more comprehensive remedy.  While Everkrisp contends there was no negotiation process with regard to protection for latent diseases, such as bacterial ring rot, it has not contended there was no opportunity to do so.   Under the circumstances, there is no element of oppression, unfair surprise, or lack of room for bargaining and negotiation such that enforcing the limitation of liability provision is procedurally unconscionable.

Everkrisp's primary argument is that the limitation of remedies provision is substantively unconscionable and, therefore, should not be enforced.  Substantive unconscionability focuses on the harshness or one-sidedness of the contractual provision.  Strand, 693 N.W.2d at 922.  The determination of whether a contractual provision is unconscionable is a question of law for the court to decide.  Constr. Assoc., Inc., 446 N.W.2d at 241.  When making this determination, a court is to look at the contract at the time it was entered, without the benefit of hindsight.  Id.

Here, the limitation of remedies provision permits Everkrisp to recover the cost of the defective product and excludes consequential damages. There is no North Dakota Supreme Court case addressing whether such a provision is unconscionable for injury resulting from defective seeds.  Other courts have found that limiting liability to the purchase price of a defective seed is

not unconscionable in light of the plain language of the Uniform Commercial Code.  These

courts have further noted that declining to enforce liability limitations in the commercial context

would render the cost of a natural product prohibitively expensive if a seller was potentially

liable for all consequential damages arising from crop failure.  Hainlen v. Atofina Chemicals,

Inc., No. IP-00-1689-C-H/K, 2001 WL 1781922 (S.D. Ind. Nov. 21, 2001); Moorer v. Hartz

Seed Co., 120 F.Supp.2d 1283, 1297 (M.D. Ala. 2000); See Helena Chemical Co. v. Wilkins, 47

S.W.3d 486, 505 (Tex. 2001) (limitation of liability clause on invoices, delivery tickets, and seed

label is effective and enforceable as to warranty claims, but does not hold true for nonwarranty

claims); Bienek v. Garst Seed Co., Inc., No. 4-93-545, 1994 WL 760576 (D.Minn. Nov. 2, 1994)

(enforcing limitation of liability provision when sunflower seeds failed to produce the yield

plaintiffs expected); Estate of Arena v. Abbott & Cobb, Inc., 551 N.Y.S.2d 715 (N.Y. App. Div.

1990) (limitation of liability provision on lettuce seed was not unconscionable); Jones v. Asgrow

Seed Co., 749 F.Supp. 836, (N.D. Ohio 1990) (limitation of liability provision in case involving

tomato seed with latent defect was not unconscionable).

      The mere fact that a defect is latent does not make a limitation of remedies provision

unconscionable.  Martin Rispens & Son v. Hall Farms, Inc., 621 N.E.2d 1078, 1087 (Ind. 1993),

abrogated by Hyundai Motor America, Inc. v. Goodin, 822 N.E.2d 947 (Ind. 2005) (abolishing

"vertical privity" in actions against a manufacturer for breach of implied warranty).  The Court

acknowledges that there are other courts that have found a limitation of remedies provision is

unconscionable when the defect is latent.  Worthy of note, however, is none of these cases

involved a statute that protects seed producers from liability, as does North Dakota in § 4-10-

12.1.  Currently, North Dakota appears to be the only state that has legislation to protect seed

producers from expansive liability when the natural product turns out to be unfit for a particular use or unmerchantable. "The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination." Manikowske v. North Dakota Workmen's Compensation Bureau, 338 N.W.2d 823, 825 (N.D. 1983) (quoting Asbury Hospital v. Cass County, 72 N.D. 359, 7 N.W.2d 438 (1943)). Everkrisp has pointed to no authority in which a court can declare a statute unconscionable, nor has this Court found any. Rather, when a statute is so unfair that to enforce it would be unconscionable, the statute ought to be declared unconstitutional by a court and "the door will be open to legislative efforts to write a valid and fair law." Wagner Bros. Inc. v. City of Williston, 335 N.W.2d 328, 331 (N.D. 1983) (Pederson, J. concurring specially). Everkrisp has not advanced a claim that the statute is unconstitutional and a party must affirmatively raise a constitutional issue. Weeks v. North Dakota Workforce Safety & Ins. Fund, 803 N.W.2d 601, 604 (N.D. 2011).

The Court predicts that upon examination of North Dakota law, which specifically limits seed producers' liability, and upon consideration of the long-standing relationship between the two similarly situated parties along with the commercial nature of this transaction, the North Dakota Supreme Court would enforce the limitation of remedies provision. The Court notes that the parties were free to choose to contract to allocate the risks that the seed will produce an entirely healthy crop. A producer who is willing to insurer the success of a buyer's crop could reasonably expect to receive a significantly higher price for its seed. Likewise, a buyer who prefers the lower price of seed without such a guarantee of recovery for lost profits and other consequential damages can make such a choice. Here, Everkrisp made that choice and purchased seed potatoes knowing there was a limitation of remedies provision.

19

This Court recognizes it has applied the same analysis but reached a different result than the decision in DJ Coleman, Inc., 693 F.Supp.2d 1055.  In DJ Coleman, the court was asked to determine whether a limitation of remedies provision is unconscionable for injury resulting from the application of agricultural chemicals.  The court found that the farmer, DJ Coleman, had "no bargaining power" because DJ Coleman is a North Dakota commercial farming operation while Nufarm is part of "an enormous, highly diversified, and international conglomerate" and the limitation of remedies provision was pre-printed on the label and not negotiated.  693 F.Supp.2d at 1073.  The court further found that the allocation of risk for defective herbicides should be borne by the manufacturer rather than the consumer because the consumer does not have the ability or resources to test its use.  In this case, there is a lack of evidence from which this Court could find Tobiason was in a superior bargaining position or that the allocation of risk for defective seed ought to be borne exclusively by Tobiason.  Given the distinguishing facts, the Court finds a different result is appropriate in this case.

The parties' contractual limit on damages allows for the recovery of the purchase price for the defective product.  Enforcement of the contractual provision serves the intended purpose contracted by the parties and is in accordance with North Dakota law.  This Court's function is to interpret the law.  If the legislature did not intend to allow a seed producer to escape liability for consequential damages, as has been done in this case, then it has the power to change the statute.  The Court finds the limitation of remedies provision is not procedurally or substantively unconscionable under North Dakota law.  Everkrisp's damages are limited to the purchase price of the seed lot.  Crystal Seed's motion for summary judgment to limit damages to the terms of the contract is granted.

### 4.        Susan Otto's Liability

Susan Otto has no ownership interest in Crystal Seed and no involvement in the production of seed potatoes (Doc. #97, Aff. of Bruce Otto ¶ 4).  Everkrisp concedes she should be dismissed from this action (Doc. #109, p. 6 of 32).  Susan Otto's motion to dismiss her as an individual defendant in this action is **GRANTED**.

### 5.        Bruce Otto's Liability

Everkrisp seeks to impose personal liability on Bruce Otto, a part-owner of Crystal Seed. Officers and directors of a corporation are generally not liable for the ordinary debts of a corporation.  Axtmann v. Chillemi, 740 N.W.2d 838, 843 (N.D. 2007).  The corporate veil may be pierced if a court determines the "legal entity was used to defeat public convenience, justify wrong, protect fraud, or defend crime."  Coughlin Constr. Co., Inc. v. Nu-Tec Industries, Inc., 755 N.W.2d 867, 874 (N.D. 2008) (citation omitted).

The North Dakota Supreme Court has set forth several factors to be considered when determining whether the corporate veil should be pierced, including:

> insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and the existence of the corporation as merely a facade for individual dealings.

Hilzendager v. Skwarok, 335 N.W.2d 768, 774 (N.D. 1983) (citing Victoria Elevator Co. of Minneapolis v. Meriden Grain Co. Inc., 283 N.W.2d 509, 512 (Minn. 1979)).  In Jablonsky v. Klemm, 377 N.W.2d 560, 564 (N.D. 1985), the court added that "an element of injustice, inequity or fundamental unfairness must be present before a court may properly pierce the corporate veil."

Everkrisp bears the burden of establishing the necessary elements for piercing the corporate veil.  Intercept Corp. v. Calima Financial, LLC, 741 N.W.2d 209, 213 (N.D. 2007).  It has failed to come forward with evidence to support any of the factors enumerated by the North Dakota Supreme Court.  Rather, Everkrisp rests on the allegations that Bruce Otto "did everything for the corporation" and as a principal he is responsible for the wrongful acts which caused the seed potatoes to become infected with bacterial ring rot.  These bases proffered by Everkrisp to pierce the corporate veil do not fall within any of the Hilzendager factors the Court is to consider.  Everkrisp has failed to meet its burden of establishing the elements to justify piercing the corporate veil.  Bruce Otto's motion to dismiss him as an individual defendant in this action is **GRANTED**.

<u>**DECISION**</u>

For the foregoing reasons, Crystal Seed's motion for summary judgment to dismiss the tort claims and to limit damages available under the warranty claim is **GRANTED**.  Bruce and Susan Otto's motion to dismiss them as individual defendants in this action is also **GRANTED**.  The Clerk is directed to enter judgment dismissing with prejudice Bruce Otto and Susan Otto as defendants in this action.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 3rd day of May, 2012.

/s/ Ralph R. Erickson
Ralph R. Erickson, Chief Judge
United States District Court